# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. CHAD ALAN RAVE, Defendant. | No. CR08-4059-DEO<br><br>**REPORT AND RECOMMENDATION ON PETITION TO REVOKE SUPERVISED RELEASE** |

This case is before me on a petition to revoke defendant Chad Alan Rave's supervised release. The petition (Doc. No. 27) was filed December 28, 2012. The Honorable Donald E. O'Brien referred this matter to me for the issuance of a report and recommended disposition (Doc. No. 32).

I held an evidentiary hearing on January 24, 2013. Plaintiff (the Government) was represented by Assistant United States Attorney Jamie Bowers. United States Probation Officer Ronica Mork was also present. Rave appeared in person and with his attorney, John Greer. The Government did not present testimony. Rave offered Exhibit 101, a letter from a former employer, and Exhibit 102, a letter from a relative who is a probation officer in another district. The Government did not object to either exhibit and both exhibits were admitted. Rave presented the testimony of LaDonna Holstein, an advocate with ATLAS ministry. Rave also made a statement to me.

## I.   BACKGROUND

On November 13, 2008, Rave was sentenced to 12 months and 1 day imprisonment and a five-year term of supervised release (TSR) based on his plea of guilty to failure to register as a sex offender. *See* Doc. No. 19. After serving his sentence, Rave was released to the State of Montana where he was charged with a

parole violation, which included absconding from the state. Following release from incarceration in Montana, Rave agreed to modify the conditions of his release to include up to 180 days in a Residential Reentry Center (RRC) because he did not have a suitable residence. Rave stayed at the RRC until he was able to secure housing with his mother in Winnebago, Nebraska.

Rave's state probation from Montana was transferred to the State of Nebraska on May 18, 2011. Doc. No. 35-1. He began serving his TSR in the District of Nebraska on July 7, 2011. Doc. No. 27. On three occasions, Rave failed to comply with GPS rules and regulations by leaving his residence too early, returning to his residence too late or leaving his residence when he was not scheduled to do so. Rave admitted these violations to state probation and his state probation was revoked due to further electronic monitoring violations. Rave had been staying with family in Nebraska, but was no longer able to reside with them.

Rave agreed to a modification of his conditions that included placement in a RRC for up to 180 days so that he could establish another suitable residence. On May 31, 2012, he reported to the RRC as ordered but the staff smelled alcohol on his breath. A breathalyzer test showed a PBT of .07. Rave admitted he had consumed beer for the entire night before reporting to the RRC. Rave stayed in the RRC until August 17, 2012. He was referred for substance abuse treatment, which he completed on October 9, 2012.

On November 27 and November 30, 2012, breathalyzers were administered which resulted in a .046 BAC and .037 BAC respectively. Rave admitted to state probation and Officer Mork that he had been drinking and felt like he needed inpatient substance abuse treatment. His TSR was modified on December 3 to include two weekends in jail and he was referred for inpatient treatment. He was scheduled to report to Synergy Center on January 4, 2013, but that facility notified Officer Mork that Rave would not be accepted because he was a sex offender. Officer Mork began

searching for another substance abuse inpatient treatment program that would accept Rave.

In December 2012, Rave committed several violations that led to Probation filing this petition. On December 16, he failed to charge his GPS unit and did not return Probation's calls. On December 17, he failed to meet with Officer Mork as scheduled. On December 21, he failed to report to Plymouth County Jail to begin serving his two weekends in jail as directed by Officer Mork.

On December 22, 23 and 24, Rave failed to appear for urine tests as scheduled. On December 23, Rave failed to charge his GPS unit and did not return Probation's call. On December 24, Probation contacted Rave's girlfriend and learned that Rave was no longer living with her. She stated that she believed he was staying with family in Sioux City. She had taken Rave's cell phone because she had been paying for it and he was not working. Rave failed to report a change of address to Probation. As of the date this petition was filed, his whereabouts were unknown. Officer Mork contacted Captain Walsh with the Dakota County Sheriff's Office who reported his last contact with Rave had been on December 4, 2012, at which time Rave reported he was still living with his girlfriend in South Sioux City, Nebraska.

The petition itemizes nine categories of alleged violations. During the hearing, Rave admitted all violations, except violation 9 (failure to remain in compliance with sex offender registration). During the hearing, LaDonna Holstein, an advocate with ATLAS ministry, testified that Rave contacted her on December 31, 2012. He told her he had been sober for a few days but felt like he needed to be in treatment. Ms. Holstein took him to the emergency room to get something to calm his nerves and then took him to his aunt's house. She told Rave to call her the next morning if he was serious about getting help. He did call, so she arranged for Rave to have an alcohol assessment and a physical. She also helped him complete an application for the Nebraska Indian Urban Health Center (NIUHC) in Omaha, Nebraska, and transported Rave there on January 4, 2013. Ms. Holstein testified that Rave was at NIUHC from

3

January 4 until January 17, 2013, when he was arrested on the warrant issued in connection with this petition. It is undisputed that Rave failed to notify Probation of his whereabouts while he was at NIUHC, or during several weeks prior.

Rave submitted two letters at the hearing. The first was from a previous employer, confirming that Rave worked as a stocker from December 2011 until April 2012. The next was a letter of recommendation from Rave's grandfather's brother, who is a probation officer in another district. In his statement to me, Rave admitted he was at fault for not contacting his probation officer. He stated that he had been staying with relatives and at his girlfriend's house. He said he felt ashamed and guilty because he had been on a "binge drunk" and knew he was violating the conditions of his TSR. He was afraid to contact Probation because he knew he was in violation and thought it was best for him to go to treatment.

## II.    ANALYSIS

"A district court may revoke supervised release if it 'finds by a preponderance of the evidence that the defendant violated a condition of supervised release.'" *United States v. Holt*, 664 F.3d 1147, 1149 (8th Cir. 2011) (quoting 18 U.S.C. § 3583(e)(3)). The court's finding that a defendant has violated the conditions of supervised release is reviewed for clear error, while an order of revocation based on such a finding is reviewed for abuse of discretion. *United States v. Carothers*, 337 F.3d 1017, 1019 (8th Cir. 2003).

I find by a preponderance of the evidence that Rave violated the terms and conditions of his supervised release based on his own admissions to all but one violation. Having so found, 18 U.S.C. § 3583(e) requires that I consider certain specified factors set forth in 18 U.S.C. § 3553(a), in making a determination as to whether Rave's term of supervised release should be terminated, extended, modified, or revoked. Although I am not required to cite each relevant factor in § 3553(a), *see*

4

*United States v. Franklin*, 397 F.3d 604, 607 (8th Cir. 2005), those factors are set forth below for the convenience of the district court in reviewing this Report and Recommendation:

> The court, in determining the particular sentence to be imposed, shall consider –
>
>> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>>
>> (2)  the need for the sentence imposed –
>>
>>> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>>
>>> (B)  to afford adequate deterrence to criminal conduct;
>>>
>>> (C)  to protect the public from further crimes of the defendant; and
>>>
>>> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>>
>> . . . .
>>
>> (4)  the kinds of sentence and the sentencing range established for –
>>
>> . . . .
>>
>>> (B)  in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
>>
>> (5)  any pertinent policy statement –

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (as referenced in 18 U.S.C. § 3583(e)). After considering these factors, I may terminate, extend, revoke or modify the term of supervised release as set forth in § 3583(e). Revocation is not mandatory in this case. *See* 18 U.S.C. § 3583(g).

Probation recommends that Rave's term of supervised release be revoked and that he be sentenced to 14 months incarceration followed by a one-year term of supervised release. Rave suggested through his attorney that two months incarceration would be more appropriate so that Rave could return to inpatient treatment more quickly.

### A. *Nature and Circumstances of Offense, and Rave's History and Characteristics*

Rave's original offense was failure to register as a sex offender. He had a Criminal History Category of VI at the time of sentencing.

Rave has a significant problem with alcohol abuse. He completed treatment at Jackson Recovery Center on October 9, 2012. However, in November 2012, he failed to appear for three urine tests and submitted two breathalyzer tests which resulted in

.046 and .037 BAC. After this incident, Rave told his probation officer he felt like he needed inpatient substance abuse treatment. Rave enrolled in a treatment facility on his own at the beginning of January, after nearly two weeks of avoiding contact with Probation. Rave testified he sought help after being in a "binge drunk" during that time. He was found and arrested at the treatment facility on January 17.

Most concerning of Rave's violations is his failure to make his whereabouts known, as required. This is especially concerning because his original offense in this case arose from his failure to register as a sex offender. While on supervised release, Rave remained out of contact with Probation for nearly a month. He failed to charge his GPS unit, failed to appear for a meeting with his Probation Officer, failed to report to jail to begin serving his agreed-upon two weekends in jail, failed to appear for scheduled urine tests and failed to contact Probation reporting a change in address. Rave admitted during the hearing that he was in a "binge drunk" during this time.

Rave is currently unemployed and appears to have no residence. Rave testified that he was staying with relatives and his girlfriend in the area when he was out of contact with Probation.

### B.    *Deterrence of Criminal Conduct*

Any modification of supervised release imposed on Rave must "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Many of the violations here constitute the most serious grade of violation and the guideline range of imprisonment for these violations of supervised release is 8 to 14 months. I find that incarceration is necessary to deter further criminal conduct by Rave and emphasize the importance of making his whereabouts known, both during the TSR and when it ends, in compliance with the requirements of registering as a sex offender.

### C. Protection of the Public from Further Crimes

Any modification of Rave's term of supervised release must protect the public from further crimes. 18 U.S.C. § 3553(a)(2)(C). Rave has not committed any crimes while on supervised release. However, the nature of his violations is similar to that of his original offense. The purpose of the sex offender registration requirement is to protect the public. Rave's refusal to report his whereabouts frustrates that purpose.

### D. Defendant's Need for Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Probation does not recommend educational or vocational training or medical care. However, Rave and Probation both agree he needs alcohol abuse treatment. Probation was in the process of finding an inpatient treatment center when Rave absconded and eventually admitted himself to a facility on his own. My recommendation takes into account Rave's admitted need for alcohol abuse treatment.

### E. Sentencing Considerations

I am required to consider pertinent policy statements issued by the United States Sentencing Commission in effect at the time of Rave's sentencing. 18 U.S.C. § 3553(a)(5). I find two such policy statements to be relevant to this inquiry. The first, Classification of Violations, U.S.S.G. § 7B1.1 (Policy Statement), sets forth three grades of supervised release violations. The most serious of Rave's violations is a Grade C violation, which consists of "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." Having so found, the court looks to the Sentencing Commission's instructions upon a finding of a Grade C violation: "Upon a finding of a Grade C violation, the court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision." U.S.S.G. § 7B1.3(a)(2), Revocation of Probation or Supervised Release (Policy Statement). Based on his Criminal History Category of VI, Rave's recommended

range of imprisonment pursuant to the Sentencing Guidelines is 8 to 14 months, with a maximum statutory term of imprisonment of two years. *See* U.S.S.G. § 7B1.4 (Policy Statement); 18 U.S.C. § 3583(e)(3). The maximum statutory term of supervised release is life.

## F.   *Sentencing Disparities*

The final consideration is whether my recommended disposition will result in "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6). The parties offered no evidence on this issue and I have no information to suggest that this is the case.

## G.   *Recommendation*

The Eighth Circuit has

> required that courts consider the policy statements in Chapter 7 [of the Sentencing Guidelines] when sentencing a violator of supervised release and [has] concluded that the suggested ranges in U.S.S.G. § 7B1.4(a) are only advisory. There are "no binding guidelines addressing the sentence for a violation of a condition of supervised release, only a policy statement about a court's options in such a situation."

*United States v. White Face*, 383 F.3d 733, 738 (8th Cir. 2004) (citation omitted) (quoting *United States v. Oliver*, 931 F.2d 463, 465 (8th Cir. 1991)). Failure to provide written reasons for sentencing outside the applicable policy statement range for revocation sentences is not reversible error, although written statements of reasons are helpful for the parties, reviewing courts, and the Sentencing Commission. *Id.* at 739; *accord United States v. Jones*, 973 F.2d 605, 607-08 (8th Cir. 1992) ("Because the Chapter 7 policy statements are not binding, the court is not required to make the explicit, detailed findings required when it departs upward from a binding guideline."). "The district court is free to depart from Chapter 7's suggested sentences when, in its considered discretion, such a departure is warranted." *United States v. Carr*, 66 F.3d 981,

9

983 (8th Cir. 1995) (per curiam); *accord United States v. Jasper*, 338 F.3d 865, 867 (8th Cir. 2003).

I have given careful consideration to the factors set forth in 18 U.S.C. § 3553(a), and hereby recommend that Rave's TSR be revoked and that Rave be sentenced to 10 months incarceration. I further recommend that upon release, the terms of Rave's TSR be re-imposed for a period of one year supervised release and that those terms be modified to require Rave to enroll in an inpatient treatment center for alcohol abuse to be designated by Probation. In making this recommendation, I credit Rave for making an independent effort to obtain treatment. Had he not done so, my recommendation would have been at the high end, or even above, the guideline range. While that decision on his part does constitute a mitigating factor, it does not come close to fully excusing his behavior during the preceding weeks.

I find that my recommended disposition will further the goals of deterrence and incapacitation, reflects the seriousness of Rave's conduct and provides just punishment for such conduct. Rave's struggle with alcohol abuse is not an excuse for failing to comply with other conditions of his TSR and the requirements that arise from his status as a sex offender. I also acknowledge with Rave and Probation that inpatient treatment for alcohol abuse would be beneficial to him. I find that the recommendation as described above is "sufficient, but not greater than necessary, to comply with" the sentence's purposes as set forth in § 3553(a)(2) and will not result in any sentencing disparities. *See* 18 U.S.C. § 3553(a).

### III. CONCLUSION

Based on the foregoing, I RESPECTFULLY RECOMMEND that the Government's petition to revoke Rave's supervised release be **granted** and that Rave be sentenced to 10 months incarceration. I further recommend that upon release, the terms of Rave's TSR be re-imposed for a period of one year of supervised release and that those

terms be modified to require Rave to enroll in an inpatient treatment center for alcohol abuse to be designated by Probation.[1]

Objections[2] must be filed **by February 8, 2013**. Responses to objections must be filed **by February 22, 2013.** However, I urge the parties to file any objections and responses as soon as possible to allow Judge O'Brien to issue a final ruling promptly.

**IT IS SO ORDERED.**

**DATED** this 25th day of January, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[1] Rave has been detained since his arrest on January 17, 2013. Pursuant to Federal Rule of Criminal Procedure 32.1(a)(6), I ordered continued detention after the January 22, 2013, revocation hearing. My recommendation that Rave be sentenced to 10 months incarceration anticipates that he will receive credit for the time he has already served, even though the final ruling on the Government's petition will not be issued until a later date.

[2] Objections must specify the parts of the report and recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72; Fed. R. Crim. P. 59.